Case number 23, 1872, Nicholas Somberg v. Karen McDonald. Arguments not to exceed 15 minutes per side. Mr. Ellison, you may proceed for the appellant. Thank you. Good morning, Philip Ellison appearing on behalf of the appellant. I'm reserving three minutes for rebuttal. Your Honors, this case is not about access, despite the Eppley's attempt to try to turn this case into an access case. This case is actually under the branch of information gathering and information gathering for further discussion on public affairs is part of and considered consistent with free speech and protection under the First Amendment for the right of expression. I'm asking this court to recognize that when the government broadcasts information publicly that they cannot consistent with the First Amendment then limit or otherwise preclude the capture of that information for the purposes of rebroadcasting, reusing, speaking positively, speaking negatively, being critical. How about altering? Well, then that would go to whether it would be truthful communications. Now when you say altering, I'm assuming you mean to alter like maybe like a deep fake type situation where they're altering it to make it look like someone said something that they didn't actually say. That would be the court or excuse me, the rules that could be established in these situations could make a more narrowly tailored rule to say that you can't alter the statements that way. But are you saying that they could limit the speech based on where the person recording is? In other words, if they're in the courtroom, can they limit someone from recording? For purposes of this case, I'm drawing that distinction. Now, whether that's my, in my, what I would argue as being what the court or what this... Let me give you a hypo and explain to me how this works. So often in high profile trials, they have an overflow room. Assume the overflow room's next door in a hotel or in a public park. Okay. The people in the park can record, but the people in the courtroom cannot? It would be, it would be, and I think the answer would be yes, because the people in the park next door would not be doing anything that would be to disrupt the proceedings that are going on in the courtroom themselves. Because the typical interest that the government asserts, and in fact, the government has done it here, that the reason why we don't allow for in-court recording, meaning in the physicality of the courtroom itself, is that it could be disruptive. Now, I mean, there's a whole host of reasons courts give for not allowing it, right? I mean, there's grandstanding of lawyers. There's grandstanding of judges. There's witness safety. There's juror safety. There's all sorts of reasons they don't want recording to go on. And all of those would be true, no matter where you're recording from. But the, but I guess what I would point to would be, is as Florida Star points out, is that the presumption is, is that if the government is broadcasting or otherwise making this information publicly accessible, that once the government, it's presumed that the government has, and I'm going to use the word scrubbed, you know, has otherwise withheld the information that they don't want broadcasted to the public when they themselves. So everything in a courtroom is publicly accessible unless it's sealed. Well, unless the courtroom was closed, and that would be a more narrowly tailored way. Right, but assume the courtroom is open, because for my example, the courtroom is open. Yes. So that case would apply equally in the courtroom and outside the courtroom. But it would, but the point of it is, is that once the government, whether, in this case, it happens to be courts in this instance, whether the government, when the government is broadcasting out that information, much like whether it's the example of the name of the, of the victim in Florida Star, we can, you look to Soderbergh is the one where they're recording criminal trials. Once the government has made that information available, the government can't then handcuff the use or re-dissemination of that. Go back to then just strictly in the courtroom. Why can they do it in the courtroom? Because the, because there, the, the government has to pass particular interest. They have to assert interest. It's our position that. You're saying it's strict scrutiny? I'm saying is I'm, I'm going to, I would argue this court, that Soderbergh held it strict scrutiny. I think Soderbergh's rationale makes perfect sense. Because the, the reason being is at least, even if it's in some lesser standard, the government has to assert some sort of interest before they can close off that speech. In most of those cases, though, you have a public place, whereas when, when it's in the courtroom, there's no public place. But here though, at least on the, I, and I know I'm appreciate that the court is trying to, you know, parse out where to draw the line on this aspect for the, but this particular case, you know, the folks that are the recipients of this, of this live broadcast that's being utilized in Michigan is they're in their houses. They're in their offices. They're in the newsrooms. They're not in the physical courtroom themselves. Now, what I'm, what I'm conceding to this court right now for purposes of this case, you don't need to get into the question, or at least we're not asserting a right to physically go in and record an actual court proceeding itself. That's not what this case is. I guess the question is, does the courtroom become a public forum because it's broadcast on Zoom or broadcast virtually? Does that make it a public, a public forum? Well, I would point this court, there's the Price case, there's the interesting observation in Price, which is the DC case that says that once the government has made information publicly available and it is a, it is the, it is a record and you want to record the public officials doing public business in a public place, we don't look to the forum analysis. Can I just push back on that for a second? The reason I don't buy that, just to be candid with you, is that would apply equally inside the courtroom and outside the courtroom because it's publicly available as soon as the doors of the courtroom are open. But the, at least that the, at least from my standpoint is, is that when the government is trying to assert, the government here is trying to assert it can cut off the right to capture and re disseminate information that's being broadcasted outside of the courtroom. Okay. And whatever, even if we use your hypothetical of your extended courtroom. What if it's just a Zoom accommodation for an attorney, which we often do, does that open the door because we've made an accommodation for an attorney? I think that's a tougher question, but I think that still, you could still arguably say that fits within the courtroom confines because it is, if it's just for that purpose, it's not being broadcast to the public. That is a direct pipeline connection between the attorney and the court itself. How does this help your client? Because your client has, right, as an attorney under Mezebov, I think it is, your client has no first amendment rights. That's correct. And we're not, we're not asserting that right as an attorney. We're asserting the right that he has the right to record because he's a member of the public through the live broadcast as being broadcasted to everyone. We're not asserting him here today as being the fact that he is an attorney in these circumstances. But he is recorded as an attorney in this circumstance, correct? But he, he recorded the live broadcast that was out there. Now he is, he is an attorney in that respect, but his purpose for making the recording was not in his role as an attorney. He was, as a member of the public, being critical of the prosecutor and the, in this case, the prosecutor's actions in this particular case. It was not in the context of being a representative of, and her name is escaping me. I want to say it's Knight, I think is the underlying client in that particular case. So I don't think this court has to make the giant step to try to make a one size fits all argument for how do we delineate between where the line is between the courtroom or the not courtroom, because this case can take the half step in this respect. And the half step is, is when a government decides that it is going to publicly broadcast information and that information is lawfully being, I mean, we're not breaking into the court's private security system to get access to these recordings. This is something the government has voluntarily decided to make publicly accessible. Once you make that information accessible, whether it's through like in the case of Stoddard Berg, where it was through providing copies of recording, whether it's like the that was pulled out in that respect, the first amendment precludes the government from handcuffing the rebroadcasting of that when for the purposes of public debate, whether it's positive, negative in that respect. So in this it's for, so to resolve this case, this court only need to say is, is Mr. Somburg was outside the courtroom. He was a live broadcast that was being recorded, that was being broadcasted out. Court say, could a court say, look, it doesn't matter if we publicly broadcast it. Let's say this is huge public interest trial and we want a lot of people to be able to see it, but what we don't want is snippets of it going viral because it'll create a misapprehension in the public. As Judge Batchelder brought up, we don't want people grandstanding, whether it be a prosecutor because the defendants on trial and the defendant's rights are at stake. We want a fair trial. We don't want a judge who's up for election grandstanding, so we're going to prevent any recordings of it. All we're going to do is broadcast it at certain rooms where people can go and watch it. Then in that case, I would call that an in-court limitation. That's not a lot, that's not a public broadcast out to the public or world at large. That's a factually distinct situation. But I will, to grab onto your hypothetical and I would simply say is those are the exact same arguments that were made as to why we should bar the public from ever being in the courtroom to begin with, and the Supreme Court has been very clear that is not permitted. Because you're making the same interest arguments that we made for why we could bar the press from ever attending and have a closed courtroom in that respect, and we only allow closed courtrooms in the most narrowly and most... But is recording really speech? I mean, why is the recording the speech versus you can say anything you want, you just can't have a recording. It's a means, it's a mechanism. Well, that's where I would point this court to the two cases I would point to that counter that would be Turner versus Lieutenant Driver, which is the Fifth Circuit that says that the First Amendment protects the making of film because it's being used as part of the subsequent speech that's going to reoccur then after that, and that's the Fifth Circuit case. The Ninth Circuit said in Animal Legal Defense Fund, which is the WASD versus WASDN, is that the making of the recording itself because it's part of going to be used for purposes of public debate or public discourse that it is, in fact, qualifies as speech itself. It's no different than, for example, if... I was trying to come up with a good analogy for what would be the equivalent of this from the age before cell phones and video recording. It would be as if the government came back and said, any member of the public who comes in can't bring a pen with them to take notes about what happened at trial. You can talk about whatever you see there. You can re-go back on to your quill and write what you want to write and everything you saw, but we're going to ban pens because if you take notes, your notes might not be fastidiously accurate as to what occurred there. I think that would be a ridiculous example, and I think this Court would be easy to say that that goes too far, much like it's too broad in its application to cut off that access. I think today's world, that recording is the functional equivalent of the pen. It's a better pen. It's the pen that, as Estes says, when we have the ability to have trials without any possible interruptions, and when someone is far away and they're getting a receiving only communication, they're not going to have those disruptions. So the interest that the government has in the courtroom to be a little more restrictive, or even a lot more restrictive, doesn't apply when it is on the receiving end of a live public broadcast where those disruptions cannot occur. And I see I'm out of time, unless the Court has any other questions. Any questions? I'm trying to decide if I want to ask the question. Okay. That's always, that's the ominous look that you get from the judges when they're thinking of that, so. I think you should ask it. Does it make any difference that what goes on in the courtroom, when it's done, it's done, it's over, period. What is live-streamed similarly, when the live stream is over, it's over, that's it. It's not, there's no permanency there at all. And what you're talking about is the right to make it permanent. But we already make it permanent. We have transcripts. Most courts make recordings. This Court, for example, we have audio record, any lawyer who's been before this Court as I have, you run, you wait till the clerk, you get excitedly while the clerk in the three or four hours after the hearing to go back to hear how good or how badly you did from the court's audio recording. In this day and age, I mean, what goes out on social media is a snippet that's often not the full context, and no one reads transcripts anymore other than judges and lawyers. And I'm not even sure the judges are reading those all these days, these days, too. But a lot of transcript reading does go on. But I guess to answer your question is, and I'm going to go back to what I said a moment ago, is isn't that the same argument to banning the pen, because your notes might not be complete, or you're making notes to further discuss, or to other, keep that case, or keep that controversy alive. We've, that's the point of the First Amendment, is that we can't cut off the speech and the debate about things that transpire in the courtroom themselves. If the government is, if the government is concerned about access to what information is made publicly available for use in discourse, they have far more narrow, narrower remedies than it is simply cutting off the speaker. They can cut off the source of the, they could cancel the live stream, and that would be their choice. The fact that they opened it. Your answer is though, give less access. If you want to protect recording, give less access. I mean, that is the answer you've given, right? Which is nothing more than the courtroom. Once the courtroom's full, too bad, because as soon as you put it on video, it's, it opens the whole world up. What I'm saying is, is that the First Amendment does not permit the, permit the government, when they do not have the interest of disruption, which is the primary argument as to why physical camera, what they call, I think the amicus call it, the antique camera, or the traditional camera in the courtroom, is that you could trip over cords, it could interfere, the lights, it could make sounds, it could interfere with the administration of the trial itself. What we don't have is, and we don't have an interest in saying trials should be kept as secret as possible, and should not be the subject of debate. And audio and video recordings help aid in that debate going forward. Because the answer, I think, is the old line of, we don't, we don't make less speech as the remedy to these problems. We should encourage more speech. Right, but that is the remedy you're giving, which is the government makes less. Let me, let me switch gears. Sure. And you can take that up in rebuttal. I just want to ask a standing question, because I struggle a little bit with what your redressability would be. Let me give you a hypo, it's easier for me. If you engage in, let's say you go out back and you burn a flag, pick your flag, whatever one you choose, and you're afraid your neighbor will call the police, can you go seek an injunction against them? No. Okay. Why isn't the prosecutor here, it's the same as the the neighbor, in the sense that any neighbor could call, here any lawyer can move, and only the judge, the, the, only the judge can hold you in contempt. So why don't, why isn't the proper party on the other side the bench? So I have sued the bench before, and that of course goes over like a lead balloon, as you one can imagine, but the difference there is the neighbor is not a state actor who has the power of the office to inflict, so cause the... Can I ask you, let me interrupt you, and I'm sorry to interrupt you, but in this, as I understand it, you tell me if I'm wrong, private lawyers, if you were on one side, or you were on a Zoom, and there were two private lawyers involved, they could also seek contempt, correct? They could petition for contempt, but at that point then, at least under Michigan, the prosecutor then becomes involved. That's fine, you know, there's still the instigating action, so, but the only way you get redressability is through the judiciary. Well, I would point this court to the McNeil case, McNeil versus Community Probationary Services, where this issue was brought up. It was involving a situation where the trial judges of Tennessee were setting bail, and it was whether or not bail, you know, bail being denied, and for different offenses, and the plaintiff in that case brought suit against the sheriff that was detaining them, and the sheriff comes in and says, well, I'm just doing what the judge tells me to do, why should I be there? McNeil says that you can, you can consistent with standing, and consistent in that the larger discussion that was part of was the 11th Amendment part of that, but the, you can consistent with your ability to go through the various actors in the chain. Now, does this provide me with complete protection against all possible circumstances? No, but it at least protects me against the individual who is actively seeking to jail my client, because if you look back in our, on the motion for summary, I believe this is exhibit E and F of our original motion for summary disposition, this was not a prosecutor coming in and saying, hey, I think he might, this might be a violation of the rule. They actually sought to, to charge him and bring charges, criminal charges, which is the role of a prosecutor in these circumstances. So, I would point this court to the fact that if the remedy is prosecutor, you can't do this, and this court then takes the opportunity to define what that rule is, I think it's going to have the effect that other prosecutors, judges, other government officials will take notice of this court's decision, but it protects Mr. Somburg from the actual person who is actually taking steps towards inflicting that harm, and is it the best possible redressability? Is it solve all possible circumstances? No. But you don't have to for redressability purposes, it just has to resolve the issue that you're having, and the issue we're having is, we have a government actor, a prosecutor, who's trying to put my client in jail for violating what we think is First Amendment activities. Okay. Thank you. Thank you. May it please the court, good morning your honors, my name is Brooke Tucker and I represent the defendant Applee Oakland County Prosecutor Karen McDonald. This case is about standing in a court policy. The plaintiff, an attorney in this matter, wants to appear at court over Zoom, take his own photos, his own video, and then post them. The problem is that he sued the wrong person. Applee requests that this court uphold the decision of the lower court. What about our speech first case that says just being subject to the process is enough? I'm sorry, could you repeat that? We have a case called speech first, and it says just being subject to the process, the legal process as a result of your speech or anything else, is enough. Is enough for Article 3 injury? Yes. I mean that's a great point, however, for this dispute to fall within, for the plaintiff to have standing in this matter, the dispute would be won against the court. Because as you pointed out in plaintiff's case, the court... No, no, but the prosecutor, as he points out, is the one bringing the action. She's brought it once and she says she'll do it again, and that means he will be, he will be subject to the process, he was subject to the process, he will be in the future. Why isn't that enough? Frankly, anybody who violates a court policy should be subject to the process of the court. There's no enforcement mechanism. I understand, but that means he has standing. There's no enforcement mechanism for the prosecutor in this particular court policy, even though that's maybe what the prosecutor wanted. She couldn't have got it. The enforcement mechanism belongs with the court, as it should, because this is a court policy that they're seeking to enact. However, at base, the plaintiff in this case has nothing but a theoretical injury against defendant McDonald. His claims are focused on the wrong party because, as you mentioned, even a decision... Okay, so in many instances what happens is there's a recording. Judges don't pay attention to social media, but the prosecutor picks it up. It's the prosecutor that keeps coming back to court and subjecting him to the process. I get, I totally agree with you. If we didn't have speech first on the books, this may look like a different case, but with speech first, it seems short of redress. It seems to do something different in my mind. I think it's a good point. However, recall that in this matter, every party is an officer of the court. Isn't that exactly what we want officers of the court to do? To allow the judge during the hearing to say, hey, how am I going to rule on this motion? Or what exactly is my, you know, ruling on the objection? We don't want them to say, hey, are you violating court policies? But I understand that, but it still doesn't answer the question of how do I, how do we deal with speech first? Well, you deal with speech first by, as you mentioned, with the plaintiff thinking about redressability. You know, the fact that there is kind of this theoretical injury, and that's an important part of standing, is important. And I mean, of course, this was four years ago, and there's nothing in the record to indicate that he has ever been threatened with contempt. And there was really no injury here. He's never ordered to take the photograph down. He was never held in contempt or fined, anything like that. So, you know, the injury being, you know, theoretical in this case is important. However, there's kind of no redressability, because he says, hey, this one particular prosecutor's office, he goes a county up or a county left, and that prosecutor's office could do the same thing. Because many, many courts, this one included, have similar policies. The court policy in question here allows you to take video or photo if you have permission. That is actually less restrictive than the court policy for this Sixth Circuit, which states in paragraph three of your electronic device policy that taking photographs and making video or audio recordings are strictly prohibited. Sure, but maybe that's, I mean, that's beside the point as well. Maybe he'll challenge that next. But what, let me ask you this. He brings up a pen and paper. Could a court ban note-taking? If you want to find that this plaintiff has standing, which, as you know, is a jurisdictional bar, and talk about the First Amendment, there's plenty of access. No one's trying to take away a pen. No one is trying to... No, I'm asking could. No, nor should it. These are live Zoom recordings, the live, you know, YouTube broadcast that he wants to talk about at this point about the amicus. But you're not answering my question. Could a pen and paper into the courtroom and taking notes because it's distracting or making sketches? At that point, I would rely on the judge in a case-by-case basis, which is really what we want. So you're saying whether or not that's... It's a yes-no. Yes, they could. I think it depends, frankly. No, I don't think they should on a normal basis. I asked could, not must. So could is yes. Yes, Your Honor. Okay. And how do you deal with cases like Minneapolis Star, which said that there, they weren't banning the Minneapolis Star from publishing. They were banning the paper. They were taxing the paper on their ink and paper. Well, I think that you should really narrow your focus to this exact case. There's no press involved in this case. This case is more akin to the Mezebov versus Allen case, where every party is an attorney. As I mentioned, they're officers of the court. And the First Amendment rights of an attorney in court doing their job are maybe a different analysis than you would give to the press. This court... The press could record? No, Your Honor. I'm saying that it, I would recommend you narrowing your focus to this particular case and these particular parties because there is, you know, mandatory precedent that shows what an attorney can and cannot do, what kind of First Amendment rights an attorney has when they're in court. And I don't think anybody's arguing, and there's nothing on the record, to say that Plaintiff Somburg was in court in a criminal pretrial hearing representing his criminal defendant. But he says he wasn't recording as, in his role as an attorney. So does that change the analysis? I think, I think in Mezebov they called it the raison d'etre. You know, the reason that you're in court is to be the attorney. If you, you know, want to switch your hat and take photos for a second and disregard the whole focus of you being there, I don't think that's that's good enough because the reason that you're in court is to represent your client. Your First Amendment rights are non-existent according to this court in Mezebov. And that's, you know, part of... So would that be a different analysis if it was the client that was doing the recording rather than the attorney? Would that be a different analysis? I think it would be a slightly different analysis because as this court has found an attorney has no First Amendment rights while they're in court. And I don't know that the court has found that for clients. However, I would argue that everyone appearing in front of the court, whether they're on Zoom or in, you know, physically in court, should be subject to the judicial discretion of whether or not they're allowed to take photographs. And that plaintiff's real issue here is with the court policy. But as you guys have, you know, found, there are three actors here. There's the court that made the policy that you can't take photos. There's the court that, you know, can enforce the policy. Then there's the plaintiff who took photos, potentially in violation of that policy. And third is the prosecutor who brought the motion to show cause asking the court, hey, he violated your policy. What do you want to do about it? Leaving it to the court's discretion. But in front of you is only the plaintiff, Somburg, who took the photos and the prosecutor who brought the motion to show cause. You can't redress his, you know, theoretical injury against this defendant. If, however, you decide that you want to kind of gloss over standing, as Judge Drain did in this case in the lower court when he found for my client anyway, and do kind of a First Amendment issue review, you should still find in favor of my client. Because, as you mentioned, Judge, in his argument, any other local prosecutor, for example, his client, could bring it to the court's attention that he's potentially violating this court policy. And as this circuit has clarified, a member of the public, or in this case, you know, the attorney, the right to record in court is... Does the prosecutor have to be involved for the court to hold in contempt? Or can, like if his client brought a contempt motion based on him recording? Great question. No, the prosecutor doesn't have to be involved. Could be fines, could be, you know, an order to take the photo down, for example, none of which happened to Plaintiff Somburg. There's nothing in the record to show that he suffered any sort of what you might consider an injury on that. The prosecutor doesn't need to be involved at all. Could they? Potentially, but that's not what happened, and there's nothing in the record to show that. But as we know, the First Amendment doesn't require, if you again choose to find standing and want to discuss the First Amendment, it doesn't require states to accommodate every potential method of recording its proceedings, and that might go to your question about the pen. We don't have to accommodate every method. If someone is taking notes with a pen... Do you apply strict scrutiny to this? No, Your Honor, you shouldn't. On the Clark case, again from this circuit, tells us that the appropriate level of scrutiny to apply would be a rational basis. I would kind of argue, I know he wants strict scrutiny, I know the amicus party wants strict scrutiny. Even if you apply strict scrutiny, I still think the court policy would pass muster. It's content neutral, it's pretty narrowly tailored, it allows you to, you know, ask the court for permission, but again, the court's not in front of you. And so even though I do think the policy, if you were to do a First Amendment review of it, would pass muster, as I think this court's similar policy, restricting electronics and photograph taking, would pass strict scrutiny. That's not necessary, that's not appropriate. Rational basis scrutiny would be appropriate on these facts. And no court, even though I know in the supplemental authority letter from plaintiff, he brought up Soderberg, that was obviously a different situation, no court has found a First Amendment right to record on facts similar to this. You are violating a court policy. If you choose to do so, as I mentioned, rational basis is appropriate. Zoom court is still court. Courts are traditionally a non-public forum for First Amendment purposes. We know that from Mezobob versus Allen. In fact, Judge Batchelder in that case found that the First Amendment rights are at their lowest point in the courtroom. In that case, the court concluded, as you know, in the... You agree that if they publish something, that's protected. The publication of anything is protected as speech, correct? Yes, Your Honor. That's what happened in Soderberg. Okay, so can a state effectively muzzle speech by forbidding the creation of any record of the speech? Because if they can take the pen away in certain situations, they can take the paper away, they can take the recording away. I mean, by forbidding the creation, can't they forbid the speech? To an extent, Your Honor. If they, for example, if they ask to take photographs and they're denied, I mean, there's still access to the court in that circumstance through a recording or a transcript. Why isn't that what the court's doing here? It's forbidding the creation of anything, and so ultimately there will be no speech in that regard. They're not prohibiting the creation. They are taking judicial discretion which is appropriate on a case-by-case basis to decide what should be recorded and what shouldn't. Plaintiff Somburg wants you to say, hey, the First Amendment protects me doing what I want. Sounds like the government dictating what speech goes out and what doesn't. No, Your Honor. It's protecting the constitutional rights of the peoples whose rights in the courtroom are most important. That not being the attorneys, that being, you know, a child victim of sex trafficking who's on the witness stand. Plaintiff Somburg would have you allow him to set up a tripod and make his own recording, but I would ask that you not even really consider the policy of the court since the court's not a defendant in front of you, but if you do to decide that that policy is appropriate under any level of scrutiny even though a rational basis is appropriate. Plaintiff says, look, just don't live stream and we can't record. What's the problem with that? The problem with that, Your Honor, is that we want people to be involved in government. We want open court. Now, we want a public open court, noting that as lawyers we know that's different than a public forum. We want a public court in a non-public forum. We want people involved. I don't want to chill courts allowing live YouTube or live Zoom because that furthers the interests of justice and furthers our ability to do our jobs well and efficiently, and I think that's good for all of us. That said, finding for the plaintiff in this matter does jeopardize people and judges being willing to post live on YouTube or have Zoom hearings, and it jeopardizes every such court rule that, like yours and like in the 52nd District, allows courts to have discretion case-by-case over what can be recorded. I ask that you uphold the grant of summary judgment, even though the basis you may find might be different than judge strains. For example, if you want to rely on standing, which as we agree here, is a fundamental dispositive issue and redressability is not able to be achieved against this defendant. So even if you find a different reason, I ask that you uphold the grant of summary judgment and show that the plaintiff either doesn't have standing or that the court policy is a matter of judicial discretion rather than a First Amendment here. Thank you. Thank you. Counsel, you have your full three minutes. Thank you. I'd like to just take that time to make two points. One is, I've heard a lot of really great arguments about why judges in the confines of this courtroom. Today you didn't see me. I got my iPad and my iPhone sitting over at this court's table, at my table, obviously. This court has the ability to control how business is conducted in this courtroom. What the argument I'm trying to make to you today is, is that when this court posts that audio recording online later on, I'm not arguing about the right to put up a tripod right here, as we just heard. What I'm arguing is that when the court voluntarily makes that information publicly accessible, the government doesn't get to handcuff the discussion and the use of that material in the public debate. Now, I get the irony of what I'm trying to do in the sense that, you know, isn't the more narrowly, doesn't it hurt more by the fact that you get the remedy would be to cut off access? This court's not required to post audio recordings online. I like it because it gives me a chance to hear myself, how good or bad I or my opponent did. But it also gives others who have the ability to say, to be critical of me, be critical of those who work for the government, be critical of those who hold lifetime appointments on the bench. So the hopefully that the overall aspect, there's a check on the system, is that criticism or positive, we always talk about criticism, but it could be a positive aspect about what the courts and what government officials are doing in their capacity. So I guess what I would point out to this court is don't get caught up on this is not an, this is not a because it touches the court, it is the court. This is case is solely about what happens outside of the courtroom that is being broadcasted to the public, to the world at large. Don't miss that fact because it's because I, for my sister counsel here today, we've not heard that distinction. They keep trying to make this about being, it touches the court, therefore it is the court aspect. The other, the other question I'd like to point out my last minute remaining is, is that there were some discussion about, about speech first. I think speech first directly resulted in Kareem. Kareem, both speech first and Kareem suggested that my client has standing in this respect. What the Supreme Court has told us is that Mr. Somburg doesn't have to actually be convicted in order to have standing sufficient to be able to challenge the basis by which government is trying to seek to impose a punishment. The question you asked about does, is the process resulting in chill and the answer is yes it is. Mr. Somburg wants to be able to continue to do these activities and he's afraid he's going to be prosecuted. Now where do you draw the line between Morrissey, which is the subjective chill versus the Kareem and speech first objective chill is we look for, there's, we look for the, which is interesting enough, we look to the McKay factors, which is a sense of irony because I was the lawyer on McKay when I came back on this the first time where I was arguing you should have a right to record in a courtroom before, but when you look to the McKay factors, these things have been, we've got a prosecutor who's brought the charges, they have, and the main, the last thing I guess I want to leave with that on that very point is this court has officially, has essentially invited counsel to disavow the prosecution of Mr. Somburg. That's what your supplemental brief I think was essentially inviting. You, they had the opportunity here, an oral argument to disavow, they have not disavowed. So the threat of prosecution is real and it is possible and it is likely, and it's more, so this makes it from, moves it from subjective to an objective chill and therefore give standing. Unless the court has any other questions here today, thank you very much. Appreciate it. Thank you both for your arguments. The court will take the case under advisement.